# In the United States Court of Federal Claims

No. 14–531C

(Filed Under Seal: September 15, 2014)

(Reissued for Publication: September 22, 2014)[1]

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| TRIDENT TECHNOLOGIES, LLC, | |
| Plaintiff, | Post-award Bid Protest; Subject Matter Jurisdiction; Task Order Award Less Than $10 Million; 10 U.S.C. § 2304c(e); Untimely Protest; <u>Blue & Gold Fleet</u>. |
| v. | |
| THE UNITED STATES, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Allen Perkins*, A. Perkins Law Firm, LLC, Birmingham, Alabama, for Plaintiff.

*Richard P. Schroeder*, Trial Attorney, with whom were *Stuart F. Delery*, Assistant Attorney General, *Robert E. Kirschman, Jr.,* Director, and *Donald E. Kinner*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C. for Defendant.

<u>OPINION AND ORDER</u>

WHEELER, Judge.

In this post-award bid protest, Plaintiff Trident Technologies, LLC ("Trident") is one of three companies holding an Indefinite Delivery/Indefinite Quantity ("IDIQ") contract to provide meteorological support services at various Navy installations throughout the United States and in Cuba. As the name implies, an IDIQ contract affords

---

[1] The Court issued this opinion under seal on September 15, 2014 and gave the parties until September 22, 2014, to submit any proposed redactions of competition-sensitive, proprietary, confidential, or other protected information. The parties submitted their proposed redactions, which have been accepted by the Court. Redactions are indicated by [. . .].

the Government a contractual mechanism against which it can place task orders when its needs are better defined. Here, the three companies were eligible to compete for task orders that the Navy awarded for three geographic regions, known as the Atlantic, Pacific, and Gulf regions. Under an initial set of 2013 task orders, Trident had been performing the meteorological support services for the Atlantic region, but it lost this work when the Navy modified the task orders on May 5, 2014 and awarded all three regions to a single company, Atmospheric Technology Services Company ("ATSC").

On May 15, 2014, Trident protested the Navy's task order award to the Government Accountability Office ("GAO"), but the GAO promptly dismissed the protest for lack of jurisdiction on June 12, 2014. Administrative Record ("AR") Tabs 19, 22. Trident then filed suit in this Court on June 23, 2014, alleging in a two-count complaint that the Navy should have conducted a new competition for the modified work, and should not have awarded the Atlantic region task order to ATSC. On July 21, 2014, the Government filed a motion to dismiss, or in the alternative for judgment on the administrative record. The Government asserts that the Court lacks subject matter jurisdiction of Trident's protest, and that in any event Trident's contention regarding the competitive procedures the Navy should have followed is untimely under the holding in Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308 (Fed. Cir. 2007). According to the Government, by waiting until after it submitted a proposal for the modified work, Trident waived its right to object to the procedures the Navy employed. For the reasons explained below, the Court grants Defendant's motion and dismisses the protest.

Factual Background

On February 7, 2013, the Navy awarded IDIQ contracts to Trident, ATSC, and Pacific Weather, Inc. to provide meteorological support services at various Naval Air Stations and auxiliary landing fields in the United States and Cuba. The contracts covered a base year and four option years. AR Tab 20; Compl. ¶ 5. The contracts provided that the Navy would issue task orders based upon geographic regions, but that the Navy reserved the right to issue task orders for any combination of sites if it was in the best interests of the Government. AR Tab 20 at 875. On February 27, 2013, the Navy awarded three task orders under the contracts, each for a geographic region. Id. Trident received the Atlantic region task order, ATSC received the Pacific region task order, and Pacific Weather received the Gulf region task order. Id. Like the IDIQ contracts, the task orders were for a base year and four option years. Id.

In February 2014, the Navy notified the three contractors that it was exercising the first option year of the contracts, and would modify the Performance Work Statement to include additional sites and to eliminate government backup weather forecasting support. AR Tabs 1, 20 at 875. The Navy's contract specialist informed the contractors that the

2

modified work statement would be at the "contract level not at the individual task order level," and that the specific task order proposals would be requested at a later date.  Id. On March 22 and 24, 2014, ATSC and Trident submitted pricing information for the modified work statement.  AR Tabs 2, 3, 20 at 875.  On March 31, 2014, in response to a Trident inquiry, the Navy's contract specialist stated that price alone would be the deciding factor in awarding the modified task orders.  AR Tab 4.

On April 15, 2014, the Navy transmitted additional performance work statement revisions to the contractors and again requested them to submit revised contract level price proposals.  AR Tab 8.  On April 18 and 21, 2014, ATSC and Trident submitted the requested contract level pricing proposals.  AR Tabs 10, 11.  On April 28, 2014, the Navy's contract specialist inquired whether the new price proposals could be used for task order pricing "to eliminate double proposals."  AR Tab 13.  Trident responded affirmatively, stating, "Yes.  Please kill two birds with one stone."  Id.  On May 5, 2014, the Navy notified Trident that the task orders for all three regions had been awarded to ATSC based upon its low price.  AR Tab 18.  ATSC's Atlantic region price for the base year and option years was $7,527,233.28.  Id.  Trident's price was $[. . . . . . . . . ].  AR Tab 20 at 877.

On May 15, 2014, Trident filed a protest with the GAO, docketed as B-409824, challenging the Navy's issuance of task orders to ATSC as well as the modification of the underlying contracts.  AR Tab 19.  On June 12, 2014, the GAO dismissed Trident's task order protest for lack of jurisdiction under 10 U.S.C. § 2304c(e), and dismissed the protest to the underlying contract as untimely.  AR Tab 22.  Trident then filed suit in this Court on June 23, 2014, alleging in two counts: (1) the Navy's contract modification should have been subject to full and open competition using a "best value" determination of all evaluation factors; and (2) the Navy improperly awarded the new task order to ATSC on the basis of price alone, without disclosing other evaluation factors.  The Government's motion to dismiss has been fully briefed, and the Court heard oral argument on September 5, 2014.  The motion is ready for decision.

## Discussion

### A.  Subject Matter Jurisdiction

Under the Tucker Act, this Court has "jurisdiction to render judgment on an action by an interested party objecting to . . . any alleged violation of statute or regulation in connection with a procurement."  28 U.S.C. § 1491(b)(1) (2012).  However, 10 U.S.C. § 2304c (2012), entitled "Task and delivery order contracts: orders," imposes a restriction on the Court's protest jurisdiction over task orders as follows:

(e) **Protests.**  (1)  A protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order except for —

    (A) a protest on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued; or

    (B) a protest of an order in excess of $10,000,000.

(2)  Notwithstanding section 3556 of title 31, the Comptroller General of the United States shall have exclusive jurisdiction of a protest authorized under paragraph (1)(B).

10 U.S.C. § 2304c(e).

The first exception in paragraph (1)(A) above does not apply here because the Navy did not alter "the scope, period, or maximum value of the contract" by issuing the modified task orders.  The scope of the contract remained at all times an agreement to provide meteorological support services, both before and after the Navy's issuance of the new task orders.  The period and maximum value of the contract did not change.  Indeed, Trident does not contend that this first exception applies.

The second exception in paragraph (1)(B) does not apply because the Navy awarded the Atlantic region task order to ATSC for $7,527,233.28, and thus the task order did not exceed $10,000,000 in value.  Even if the task order were valued greater than $10,000,000, a bid protest challenging the task order could only be brought at the GAO.  10 U.S.C. § 2304c(e)(2).  Accordingly, neither exception applies, and the Court lacks subject matter jurisdiction of Trident's protest.

Trident nevertheless requests the Court to accept jurisdiction based upon the requirements of 10 U.S.C. § 2304c(d), entitled "Enhanced competition for orders in excess of $5,000,000."  This section describes a series of competition objectives designed to "provide all contractors a fair opportunity to be considered."  Id.  Trident asserts that Congress must have erred in creating these obligations for orders exceeding $5,000,000, but then limiting protests to those orders that exceed $10,000,000.  Trident contends that, for orders valued between $5,000,000 and $10,000,000, such as the Atlantic region task order, Congress created a right without any remedy.  Trident wants the Court to find that the protest threshold should have been $5,000,000, and asks the Court to read that change into the statute.

However, Trident fails to acknowledge that there are at least two remedies available for task orders between $5,000,000 and $10,000,000.  First, under 10 U.S.C. § 2304c(f), an agency ombudsman is responsible for reviewing complaints and ensuring that a fair opportunity is afforded to all contractors competing for task orders.  Under the statute, the ombudsman must be "a senior agency official who is independent of the contracting officer for the contracts and may be the agency's competition advocate."  Id.  Thus, an aggrieved contractor may always pursue relief with the designated agency ombudsman.  Second, any task order that expands the scope of the underlying contract may be protested, even if it falls below the $10,000,000 threshold.  The statutory scheme created in 10 U.S.C. § 2304c fits together in all respects, and the Court does not perceive any "drafting errors" by Congress.  The Court will follow the legal maxim that when "statutory language is plain and unambiguous, then it controls."  Res-Care, Inc. v. United States, 735 F.3d 1384, 1388 (Fed. Cir. 2013) (citations omitted).

    B.  Timeliness

Even if the Court had jurisdiction of Trident's protest, the Court still could not hear Trident's complaints about the Navy's procedures in issuing new task orders.  It is well-settled in this Court that "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims."  Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1313 (Fed. Cir. 2007).  Such a rule serves to deter a disappointed offeror from employing a wait-and-see method of protesting solicitation flaws only after it loses the award.  "Vendors cannot sit on their rights to challenge what they believe is an unfair solicitation, roll the dice and see if they receive an award and then, if unsuccessful, claim the solicitation was infirm."  Id. at 1314 (quoting Argencord Mach. & Equip., Inc. v. United States, 68 Fed. Cl. 167, 175, n.14 (2005)).

Here, Trident participated in and executed three contract modifications without complaint, and then informed the Navy that it could use the same pricing information for the task order competition.  ("Yes.  Please kill two birds with one stone.") AR Tab 13.  Only after learning that it had lost the task order award for the Atlantic Region to ATSC did Trident file its protest with the GAO.  This is the very type of action prohibited under the Blue & Gold Fleet rule.  While Trident argues that its confusion over the contract and competition terms excused its lack of an earlier protest, the Court is not persuaded.  Trident knew the Navy's process at each step of the way, and participated fully without objection.  Therefore, Trident's claims are waived for untimeliness.

Conclusion

For the foregoing reasons, the Government's motion to dismiss Plaintiff's complaint for lack of jurisdiction is GRANTED, and the Government's alternative motion for judgment on the administrative record due to the untimeliness of Plaintiff's protest also is GRANTED.  Plaintiff's complaint is DISMISSED.  No costs.

This decision is issued under seal.  On or before September 22, 2014, the parties shall carefully review this opinion for competition-sensitive, proprietary, confidential or other protected information, and submit to the Court proposed redactions to this opinion, if any, before it is released for publication.  The parties are requested to minimize their requested redactions so that the Court may publish as much of the decision as possible.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge